SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MARTIN D. KATZ, Cal. Bar No. 110681
WHITNEY WALTERS, Cal. Bar No. 237781
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701
mkatz@sheppardmullin.com
wwalters@sheppardmullin.com

Attorneys for Plaintiff
THE TALL TREE INSURANCE COMPANY

CRAIG & WINKELMAN LLP
BRUCE H. WINKELMAN, Cal. Bar No. 124455
2001 Addison Street, Suite 300
Berkeley, California 94704
Telephone: 510-549-3330
Facsimile: 510-217-5894

Attorneys for Defendant
MUNICH REINSURANCE AMERICA, INC.,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

THE TALL TREE INSURANCE COMPANY,

Plaintiff,

v.

MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY,,

Defendant.

Case No. CV 08-01060 (MMC)

**JOINT CASE MANAGEMENT STATEMENT**

The Hon. Maxine M. Chesney

Date: June 13, 2008
Time: 10:30 a.m.
Ctrm: 7, 19th Floor

[Complaint Filed: February 21, 2008]

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Standing Order for All Judges of the Northern District of California, plaintiff The Tall Tree Insurance Company ("Plaintiff" or "Tall Tree") and defendant Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company ("Defendant" or "Munich Re," and together with Tall Tree, the "Parties") conferred telephonically through their respective counsel on May 23, 2008, and respectfully submit this Joint Case Management Statement in connection with the pre-trial conference scheduled for June 13, 2008 at 10:30 a.m.

## I. JURISDICTION AND SERVICE

Tall Tree contends that the Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. §§ 2201 and 2202, that there is complete diversity between the parties, and that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Tall Tree further contends that no issues regarding personal jurisdiction or venue exist, and no parties remain to be served.

Munich Re contends that the Court lacks subject matter jurisdiction to entertain this action pursuant to Article III of the United States Constitution and required under 28 U.S.C. §§ 2201 and 2202. As set forth in Section V, Munich Re will be filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

## II. DESCRIPTION OF THE CASE

### A. Tall Tree's Contentions

This is an action for a declaratory judgment that: (a) under two excess liability insurance policies issued by Tall Tree to Hewlett-Packard Company ("HP"), there is coverage for certain underlying actions brought against HP; and (b) Tall Tree's coverage obligations to HP give rise to Munich Re's obligation under two reinsurance agreements between Munich Re and Tall Tree to reimburse Tall Tree for the amounts Tall Tree pays to HP in good faith.

HP is insured under two excess liability insurance policies issued by Tall Tree (the "Policies"). The Policies provide that, subject to a single specified retained limit, Tall Tree is obligated to pay the total sum the insured, HP, shall become legally obligated to pay as damages and for defense costs (as further defined by the term "Ultimate Net Loss") on account of "Advertising Liability." The Policies define "Advertising Liability" to mean "injury arising out of [publicity or promotion of any form]," including "injury arising from a third party's reliance upon the content of material disseminated by the Named Insured or with their permission."

In 2000, HP was named as a defendant in various class actions, each of which alleged that HP engaged in unfair and deceptive advertising and marketing practices by advertising and selling printers with cartridges that contained less ink than a full capacity replacement cartridge (the "Starter Cartridge Suits"). HP's defense of the Starter Cartridge Suits was extremely successful. All of the cases were resolved either by an adjudication in favor of HP or by agreement with the underlying plaintiffs whereby the plaintiffs dismissed the suits. However, HP incurred substantial defense costs, well in excess of the retained limit specified in the Policies, to defend against and resolve the Starter Cartridge Suits.

Tall Tree gave notice of the Starter Cartridge Suits to Munich Re, which reinsures Tall Tree's liability under the Policies pursuant to two reinsurance agreements (the "Reinsurance Agreements"). The Reinsurance Agreement reinsuring one of the Tall Tree Policies provides, in pertinent part, as follows: "[Munich Re] agrees to indemnify [Tall Tree] against losses or damages which [Tall Tree] is legally obligated to pay with respect to which insurance is afforded during the term of this Certificate under the policy reinsured." The Reinsurance Agreement reinsuring the second Tall Tree Policy provides, in pertinent part, that: "The liability of [Munich Re], as specified in this Agreement, shall follow that of [Tall Tree] . . . [Munich Re] shall, in every claim to which this Agreement applies involving amounts that [Tall Tree] is legally obligated to pay . . . follow the fortunes

of the Reinsured, as long as it is within the terms and conditions of this Reinsurance Agreement . . . ."

Tall Tree has requested that Munich Re confirm that it would reimburse Tall Tree under the Reinsurance Agreements for the amounts Tall Tree is required to pay to HP. Munich Re has denied any duty to reimburse Tall Tree if Tall Tree pays HP for the Starter Cartridge Suits, claiming that there is no coverage for the Starter Cartridge Suits under the "Advertising Liability" provisions of the Policies.

Tall Tree believes that Munich Re has misconstrued the Policies, and therefore, Munich Re's obligations under the Reinsurance Agreements. The parties therefore require a judicial determination as to whether the Starter Cartridge Suits give rise to an obligation by Tall Tree to pay HP for the defense costs HP incurred, subject to the specified retained limit, with a corresponding obligation of Munich Re to reimburse Tall Tree pursuant to the Reinsurance Agreements.

**B. Munich Re's Contentions**

This is a reinsurance dispute between plaintiff Tall Tree and its reinsurer, Munich Re. Tall Tree is the captive insurance company of HP and issued excess liability insurance policies to HP beginning in 1997, providing varying levels of coverage in excess of $10,000,000.[1] Munich Re provided 100% reinsurance under the Reinsurance Agreements, facultative reinsurance contracts issued by American Re-Insurance Company.[2]

---

[1] A "captive insurance company" is generally defined as a risk-financing method or form of self-insurance involving the establishment of a subsidiary corporation or association organized to write insurance. See generally Westport Insurance Corporation v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 160 n.6, (M.D. Pa. 2007).

[2] Reinsurance is a contractual indemnity arrangement whereby one insurer (the ceding insurer) transfers all or a portion of the risk it underwrites pursuant to a policy or group of policies to another insurer (the reinsurer). See Ostrager & Newman, Handbook on Insurance Coverage Disputes, §15.01[a] (15th ed. 2008). "Facultative reinsurance" refers to an arrangement by which individual risks are offered by the ceding insurer to a reinsurer who as the right (faculty) to accept or reject each such risk. By contrast, "treaty reinsurance" is an automatic reinsurance agreement between the ceding insurer and the reinsurer by which the reinsurer is

The dispute arises from the Starter Cartridge Suits, a series of approximately 32 class action lawsuits filed throughout the nation against Tall Tree's insured, HP, alleging that HP misrepresented the amount of ink contained in so-called starter ink cartridges that were provided in new HP ink-jet printers. The Starter Cartridge Suits generally alleged that HP provided "starter" or "economy" cartridges that contained less ink than refill cartridges. These "starter" or "economy" cartridges were allegedly distributed with HP printers between August 1997 and 2000. The Starter Cartridge Suits alleged causes of action for fraud, fraudulent concealment, negligent misrepresentation, violations of various state trade practice laws, and breaches of warranty.

HP tendered the Starter Cartridge Suits to its primary insurer, Old Republic Insurance Company, and its excess insurer, Tall Tree, under those policies in effect between 1997 and 2001, including the Policies. Old Republic Insurance Company denied coverage in April 2002. Although Tall Tree initially denied coverage as well, it later retained HP's retained coverage counsel and reversed its position.

HP resolved the Starter Cartridge Suits in approximately 2006. While HP paid no indemnity Tall Tree contends HP incurred approximately $21,600,000 in costs defending the Starter Cartridge Suits. Tall Tree contends that HP seeks from it payment for a portion of those defense costs. To date, Tall Tree has not made any payment to HP relating to the Starter Cartridge Suits, and HP has not initiated legal action to either recover the claimed defense costs or seek a determination HP's rights under the Policies.

Tall Tree seeks declaratory relief for two layers of insurance contracts. First, Tall Tree asks this Court to declare that one or more of the Policies issued to HP provide coverage to HP for the Starter Cartridge Suits. Second, Tall Tree asks this Court to declare that the Reinsurance Agreements would provide an indemnity

---

bound to accept all risks ceded to it, usually for a particular time period. <u>See</u> <u>Rupp's Insurance and Risk Management Glossary</u>, NILS Publishing, (2d ed. 1996).

obligation to Tall Tree should Tall Tree be obligated to indemnify HP for defense costs incurred in the Starter Cartridge Suits.

Munich Re contends that this action does not assert a proper case or controversy under Article III and seeks a hypothetical determination as Tall Tree has not properly paid any claim and has not presented a request for indemnity under the Reinsurance Agreements. Munich Re further contends that the case is not ripe for adjudication and that it is improper for Tall Tree to seek declaratory relief against Munich Re under Tall Tree's excess liability insurance policies as Munich Re is not a party to those contracts and HP is not a party to this action.

## III. PRINCIPAL FACTUAL AND LEGAL ISSUES

### A. Whether The Court Has Subject Matter Jurisdiction Over This Declaratory Judgment Action

Munich Re contends that the action does not give rise to a case or controversy and seeks a hypothetical, advisory or contingent-based opinion. Munich Re further contends that the action is not ripe, and even if there were a case or controversy providing this Court with subject matter jurisdiction, the Court should decline to exercise that jurisdiction. Tall Tree disputes these contentions, and contends that the Court has (and should exercise) jurisdiction under the Declaratory Judgment Act to resolve this dispute, as it involves a substantial controversy of sufficient immediacy and reality. These matters will be briefed in a forthcoming Motion to Dismiss.

### B. Whether The Policies Provide Coverage For HP's Liabilities In The Starter Cartridge Suits

1. Tall Tree's Contentions – The Policies provide coverage for the liability that HP faced in the Starter Cartridge Suits.

The Policies insure HP against "Advertising Liability," which is defined to include "***injury arising from a third party's reliance upon the content of material***

***disseminated by the Named Insured [HP] or with their permission***."[3] The Starter Cartridge Suits alleged that third parties relied on the content of materials that HP disseminated (specifically, packages and displays for HP printers) to their detriment. Thus, the Policies unambiguously provide coverage for precisely the type of liability that HP faced in the Starter Cartridge Suits.

Even if the Court were to somehow find that the Policy language is ambiguous – and Tall Tree sees no basis for such a finding – Munich Re would fare no better because coverage is consistent with HP's objectively reasonable expectations. See Powerline Oil Co. v. Superior Court, 37 Cal. 4th 377, 390 (2005); see also Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992) ("A court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with *the insured's* objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy.").

Here, there is no question that coverage is consistent with HP's objectively reasonable expectations. HP expressly bargained for and obtained enhanced "Advertising Liability" coverage beginning in 1999. Indeed, the Policies expressly provide that "Advertising Liability" includes "injury arising from a third party's reliance upon the content of material disseminated" by HP. Given this language, it

[3] The definition of "Advertising Liability" language that appears in the Policies was heavily negotiated by the parties and specifically designed to broaden insurance coverage for HP. These negotiations occurred in the aftermath of a Ninth Circuit decision more favorable to insurers, Cahill v. Liberty Mutual Insurance Company, 80 F.3d 336 (9th Cir. 1996). In that decision, the Ninth Circuit held that the policyholder could not have reasonably expected that, standing alone, the language "any negligent act, error or omission in the use of advertising or merchandising ideas" in the policy's definition of "Advertising Injury" would include claims arising from misleading investment advice. Expanding HP's coverage following the Cahill decision, the parties contractually eliminated any requirement that the "Advertising Injury" arise from the advertisement itself, and instead imposed a different causal connection requirement – one that would afford enhanced coverage for an "injury arising from a third party's reliance upon the content of material disseminated by the Named Insured [HP] or with their permission."

is reasonable for HP to have expected there to be coverage for injuries arising from a third party's reliance upon allegedly unfair and deceptive advertising.

2. Munich Re's Contentions

As noted above, Munich Re contends this matter is an appropriate subject for declaratory relief. Tall Tree seeks to litigate its obligations vis-à-vis its insured against its reinsurer and then use that declaration as a basis for declaratory relief under the Reinsurance Agreements.

Munich Re does not believe that Tall Tree can sustain the burden of proof to prove that the Policies provide coverage for the Starter Cartridge Suits, assuming such an action is proper against Munich Re. The Policies do not provide a "duty to defend"; rather, they are indemnity contracts. In making any determinations in this case, it will be necessary to review all of the excess liability policies and all of their terms and conditions, not simply one definition taken in isolation.

The vast majority of the claims alleged in the Starter Cartridge Suits involve purchase dates that predate the excess liability policies containing the Advertising Injury language exclusively relied upon by Tall Tree. Moreover, the Starter Cartridge Suits do not give rise to the Advertising Injury definition relied upon by Tall Tree, even if the timing of the events were ignored.

Tall Tree's focus on a mid-term alteration of the Advertising Injury definition, to the analytical exclusion of other policy terms and conditions, is contrary to California law governing contract interpretation. While Tall Tree chose not to include copies of the entire Policies with its complaint, Munich Re believes that any proper coverage evaluation will require, at a minimum, determination of whether there was an "occurrence", the timing of the "occurrence", the number of "occurrences", whether the Starter Cartridge Suits fall within the "Advertising Injury" definition, which "Advertising Injury" definition applies, and the application of other terms, conditions, definitions and exclusions. To the extent Tall Tree believes a revised definition of "Advertising Injury" applies, that revision was made

during the term of another Tall Tree excess policy and within a short time before the first Starter Cartridge Suits were filed. The insured's prior knowledge of the Starter Cartridge claims and whether Tall Tree and/or Munich Re was properly informed of the claims may be a further issue. The parties' intent for altering the excess liability policies will also be the subject of discovery.

Munich Re believes that Tall Tree misapplies the rules for contract interpretation under California law. Munich Re believes Tall Tree failed to properly investigate the Starter Cartridge Suits and failed to properly analyze the facts and Policies in issue. To the extent Tall Tree believed that portions of the Starter Cartridge Suits were covered, Tall Tree failed any attempt to allocate between covered and uncovered claims.

### C. Whether Munich Re Has An Obligation Under The Reinsurance Agreements To Reimburse Tall Tree For The Amounts Tall Tree Pays To HP.

#### 1. Tall Tree's Contentions

The Reinsurance Agreements cover the full policy periods of the Policies. The Reinsurance Agreement reinsuring one of the Tall Tree Policies provides, in pertinent part, that:

> [Munich Re] agrees to indemnify [Tall Tree] against losses or damages which [Tall Tree] is legally obligated to pay with respect to which insurance is afforded during the term of this Certificate under the policy reinsured.

The Reinsurance Agreement reinsuring the second Tall Tree Policy provides, in pertinent part, that:

> The liability of [Munich Re], as specified in this Agreement, shall follow that of [Tall Tree] . . . [Munich Re] shall, in every claim to which this Agreement applies involving amounts that [Tall Tree] is legally obligated to pay . . . follow the fortunes of the Reinsured, as long as it is within the terms and conditions of this Reinsurance Agreement . . . .

Tall Tree, therefore, contends that its coverage obligations under the Policies give rise to Munich Re's obligation under the Reinsurance Agreements to reimburse Tall Tree for the amounts Tall Tree pays to HP in good faith.

2. Munich Re's Contentions

The Reinsurance Agreements are indemnity contracts. It is undisputed that Tall Tree has incurred no legal obligation to pay, has submitted no proof of loss and admits no payment for the Starter Cartridge Suits have been made to HP. Nor has HP or Tall Tree filed a declaratory relief action to determine their respective rights and obligations under the excess policies. Moreover, Tall Tree will bear the burden of providing that any payments it did make were consistent with its contractual obligations under the Policies, are actually covered under the Reinsurance Agreements and are otherwise consistent with Tall Tree's obligations of utmost good faith and fair dealing owed to Munich Re.

**D. Whether The Reinsurance Agreements Obligate Munich Re To "Follow The Fortunes"**

1. Tall Tree's Contentions

Munich Re cannot dispute coverage as a "follow the fortunes" reinsurer. Under the "follow the fortunes" doctrine, if the ceding insurer decides to settle and pay a claim, the reinsurer generally cannot raise coverage defenses to avoid paying its share of the loss. Rather, in the absence of fraud or bad faith, the reinsurer must "follow the fortunes" of the ceding insurer on any claims under the policy. See, e.g., Lipton v. Superior Court, 48 Cal. App. 4th 1599, 1617 (1996). See also Nat'l American Ins. Co. of California v. Certain Underwriters at Lloyd's London, 93 F.3d 529, 535 (9th Cir. 1996) (California law) (citing Christiania Gen. Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268, 280 (2d Cir. 1992) ("Under the 'follow the fortunes' doctrine, a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if technically not covered by it. A reinsurer cannot second guess the good faith liability determinations made by its reinsured, or

the reinsured's good faith decision to waive defenses to which it may be entitled.") (citations omitted) and Aetna Casualty & Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328, 1347 (S.D.N.Y. 1995) ("[S]ubject to the requirements of good faith and a reasonable businesslike investigation, the ceding company may bind the reinsurer to follow its settlement fortunes when it concedes that a particular claim falls within the scope of coverage.")).

While Tall Tree is a captive of HP, the relationship between HP and Tall Tree was known by Munich Re when it agreed to the "follow the fortunes" provision in the Reinsurance Agreement. Moreover, there is no evidence of fraud or bad faith because there wasn't any. Accordingly, under the "follow the fortunes" doctrine, Munich Re cannot dispute coverage and should be obligated to reimburse Tall Tree – even if there is a determination that the Starter Cartridge Suits were not covered under the Policies issued by HP to Tall Tree.

2. Munich Re's Contentions

Munich Re contends that any evaluation of the Reinsurance Agreements will require review of all contractual terms and conditions. However, Tall Tree does not attach the Reinsurance Agreements to its complaint and recites isolated clauses taken out of context in order to fashion its contentions. Munich Re contends that multiple reinsurance contracts were issued during the relevant period and Munich Re does not "follow the fortunes" under one or more of those contracts. Munich Re believes that Tall Tree will bear the burden of proving coverage and on proving the application of a "follow the fortunes" doctrine to this matter.

Moreover, while Tall Tree discusses "follow the fortunes" in the abstract, it does not explain precisely what fortunes it believes Munich Re is presently obligated to follow. Tall Tree has made no payment to HP, has submitted no proof of loss as required under the Reinsurance Agreements, and has not provided any settlement or payment allocation.

Further, the Reinsurance Agreements require that Tall Tree be legally obligated to pay and that the ceded claim be covered under the reinsurance. In addition, the second reinsurance contract specifically provides that ex gratia payments are not binding on Munich Re in the absence of its prior written consent. Tall Tree's interpretation is both an incomplete expression of the law and disregards entirely the actual contract language between the parties.

**E. Whether Tall Tree Has Acted In Accordance With Its Duty of Utmost Good Faith and Fair Dealing**

1. Tall Tree's Contentions

Tall Tree has unquestionably acted in good faith at all times. After analyzing coverage issues, Tall Tree made a good faith determination that Munich Re has misconstrued the Policies, and thus, Munich Re's obligations under the Reinsurance Agreements. Munich Re has denied any duty to reimburse Tall Tree if Tall Tree pays HP for the Starter Cartridge Suits, claiming that there is no coverage for the Starter Cartridge Suits under the "Advertising Liability" provisions of the Policies. Tall Tree commenced this declaratory judgment action to obtain guidance from the Court regarding the Parties' dispute.

While Tall Tree is a captive of HP, the relationship between HP and Tall Tree was known by Munich Re when it agreed to the "follow the fortunes" in the Reinsurance Agreement reinsuring Policy No. 470-1xL002-F. Accordingly, in the absence of fraud or bad faith, Munich Re cannot dispute coverage. Here, there is no evidence of fraud or bad faith because there wasn't any.

2. Munich Re's Contention

Even though it is a captive insurer for HP, Tall Tree owes Munich Re the same duty of utmost good faith and fair dealing as any other ceding insurer owes to its reinsurer. This includes the duty of utmost good faith and fair dealing in handling HP's claim under Tall Tree's policies, the duty to responsibly investigate

the claim, the duty to advocate all applicable coverage defenses and the duty to handle the claim at arm's length from HP.

Tall Tree breached its obligations to Munich Re to the extent it failed to conduct an independent investigation, failed to analyze the coverage issues and advocate all potential coverage defenses, failed to retain coverage counsel independent from HP and failed to handle the claim at arm's length from HP. One example of Tall Tree's breach is its decision to retain HP's coverage counsel. The *only* coverage analysis Tall Tree provided to Munich Re was an opinion provided by HP's coverage counsel. Munich Re contends that the retention of its insured's coverage counsel is prima facie evidence of Tall Tree's failure to act independently of HP and a complete disregard of its obligations to Munich Re.

## IV. MOTIONS

To date, neither party has filed any motions. Munich Re anticipates filing a Motion to Dismiss and is presently intending on filing said motion before the Case Management Conference. The Parties anticipate the filing of one or more motions for summary judgment or partial summary judgment.

## V. AMENDMENT OF PLEADINGS

At this time, neither party expects any parties, claims or defenses to be added or dismissed. The parties agree that September 15, 2008, will be the last day to file a motion for amending the pleadings, and that October 17, 2008, will be the last day for the hearing of a motion to amend the pleadings.

## VI. EVIDENCE PRESERVATION

Tall Tree and Munich Re believe that they have preserved all relevant evidence during the historical events giving rise to this reinsurance dispute.

## VII. DISCLOSURES

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure Plaintiff and Defendant conferred, by and through their respective counsel, on May 23, 2008.

Plaintiff and Defendant agree to serve their respective initial disclosures under Rule 26(a)(1) by June 20, 2008.

## VIII. DISCOVERY

### A. Subjects On Which Discovery May Be Needed

Tall Tree anticipates that discovery will be focused on the negotiation of the Policies and the Reinsurance Agreements, including HP's and Tall Tree's reasonable expectations and liability determinations in connection therewith.

Munich Re anticipates that discovery will be focused on Tall Tree's coverage investigation and analysis, the relationship between Tall Tree and HP, HP's influence over Tall Tree regarding the Starter Cartridge Claims, Tall Tree's discharge of its obligations to Munich Re, Tall Tree's/HP's underwriting disclosures of claims relating to facts giving rise to the Starter Cartridge Suits, HP's knowledge of potential claims relating to Starter Cartridge Suits, and the basis for HP's decisions to alter Tall Tree's policy language mid-term.

### B. Phases And Timing Of Discovery

The Parties propose a discovery plan as set forth in Section XVII, below. The Parties will also jointly submit a proposed Protective Order to govern the disclosure of confidential and proprietary information.

## IX. CLASS ACTION

This case is not a class action.

## X. RELATED CASES

There are no related cases or proceedings pending before any other court or administrative body.

## XI. RELIEF

Tall Tree seeks a declaratory judgment: (a) that there is coverage for the Starter Cartridge Suits under the Policies Tall Tree issued to HP, giving rise to Tall Tree's obligation to reimburse HP for the defense costs HP incurred in connection with the Starter Cartridge Suits, in excess of the specified retained limit set forth in

the Policies; and (b) that Tall Tree's coverage obligations under the Policies give rise to Munich Re's obligation under the Reinsurance Agreements to reimburse Tall Tree for the amounts Tall Tree pays to HP in good faith, including any interest that Tall Tree pays to HP for the amounts outstanding. Tall Tree further seeks an award of all of its costs and expenses incurred in this matter and such other and further relief as the Court deems just, necessary and proper.

Munich Re's answer seeks a declaration that it has no duty to pay for the alleged amounts Tall Tree contends are owed under the Reinsurance Agreements, costs of suit and any further relief the Court deems just or proper.

## XII. SETTLEMENT AND ADR

The Parties previously participated in private mediation in November 2006, prior to Tall Tree's filing of the lawsuit. The Parties were unable to reach agreement.

The Parties have discussed the possibility of settlement and available ADR options provided by the Court and private entities. Tall Tree believes that no early ADR process is likely to deliver benefits to the parties sufficient to justify the resources consumed by its use, particularly in light of the fact that the parties already participated in an unsuccessful private mediation prior to commencement of this lawsuit. However, Tall Tree believes that substantive settlement discussions would be more productive after the exchange of discovery; and therefore, requests that the Court enter an order requiring the parties to engage in one of the available ADR processes (to be agreed upon by the parties at some later date) after December 5, 2008 (the formal non-expert discovery and motion cut-off date proposed by Tall Tree).

Munich Re is not opposed to non-binding mediation through the Court's ADR Settlement Program. Munich Re does not believe such ADR process should be scheduled before the Court rules on Munich Re's Motion to Dismiss.

The parties certify that they have complied with the requirements of ADR Local Rule 3.5 by serving and filing an ADR Certification and Notice of Need for ADR Phone Conference.

**XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

At this time, the parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

**XIV. OTHER REFERENCES**

Prior to commencement of this lawsuit, the parties engaged in an unsuccessful private mediation of the dispute. At this time, the parties do not believe that the case is suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**XV. NARROWING OF ISSUES**

Plaintiff and Defendant discussed the possibility of narrowing the issues and agreed that they would be in a better position to make substantive proposals to narrow the issues and to expedite the presentation of evidence at trial after the exchange of discovery.

**XVI. EXPEDITED SCHEDULE**

The Parties do not believe this case is particularly appropriate for handling on an expedited basis.

**XVII. SCHEDULING**

**A. Tall Tree's Proposal**

| | |
|---|---|
| Non-Expert Discovery and Motion Cut-Off: | December 5, 2008 |
| Designation of Experts: | December 26, 2008 |
| Designation of Rebuttal Experts: | January 16, 2009 |
| Expert Discovery and Motion Cut-Off: | February 6, 2009 |
| Dispositive Motion Hearing Date Cut-Off: | March 27, 2009 |
| Pre-Trial Conference: | April 21, 2009 |
| Trial: | May 4, 2009 |

**B. Munich Re's Proposal**

| | |
|---|---|
| Completion of non-expert discovery: | February 20, 2009 |
| Dispositive motions – filed: | March 23, 2009 |
| Opposition – filed: | April 13, 2009 |
| Reply – filed: | May 4, 2009 |
| Dispositive motions – hearing: | June 15, 2009 |
| Designation of Experts/Rule 26 Reports: | July 7, 2009 |
| Designation of Rebuttal Experts: | July 21, 2009 |
| Completion of Expert Discovery: | August 14, 2009 |
| Trial | October 5, 2009 |

## XVIII. TRIAL

The Parties estimate that the trial will last 3-5 days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The parties have each filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16, and hereby restate that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities: (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

//

//

//

//

//

//

//

Plaintiff: Hewlett-Packard Company, a Delaware corporation (Tall Tree is a wholly-owned subsidiary of Hewlett-Packard Company).

Defendant: Munich Re Group

Dated: June 6, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By Martin D Katz /whw

Martin D. Katz
Attorneys for Plaintiff
THE TALL TREE INSURANCE COMPANY

Dated: June 6, 2008

CRAIG & WINKELMAN LLP

By Bruce H. Winkelman / with authority whw

Bruce H. Winkelman
Attorneys for Defendant
MUNICH REINSURANCE AMERICA, INC.