1 Bruce H. Winkelman, Esq. (State Bar No. 124455)
2 CRAIG & WINKELMAN LLP
  2001 Addison Street, Suite 300
3 Berkeley, California 94704
  Telephone: (510) 549-3330
4 Facsimile: (510) 217-5894

5

6 Counsel for Defendant
  MUNICH REINSURANCE AMERICA, INC.

7

8

9 UNITED STATES DISTRICT COURT

10 NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12 THE TALL TREE INSURANCE
   COMPANY,

13            Plaintiff,

14      v.

15 MUNICH REINSURANCE AMERICA,
   INC., formerly known as AMERICAN
16 RE-INSURANCE COMPANY,

17            Defendant.

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 08-01060 (MMC)

**MUNICH REINSURANCE AMERICA, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12(c) & 12(h)(3) MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON LACK OF SUBJECT-MATTER JURISDICTION**

The Hon. Maxine M. Chesney

Date:    August 1, 2008
Time:    9:00 a.m.
Ctrm:    7, 19th Floor

[Complaint Filed: February 21, 2008]

# I.    INTRODUCTION

Tall Tree's Complaint seeks declarations for two different types of insurance contracts inhabiting different insurance-related realms.  The first type of insurance is excess liability insurance directly issued by Tall Tree to HP ("Excess Policies"), providing HP with general liability coverage in excess of unspecified primary insurance.  MRAm is *not* a party to the Excess Policies.  The second type is reinsurance between two insurers, Tall Tree and MRAm ("Reinsurance Agreements").  Tall Tree acknowledges that it has not made any payment to HP pursuant to the Excess Policies' terms and has not sought a judicial determination against HP regarding the Excess Policies' potential coverage for HP's alleged claim.  Tall Tree does not sue HP.  Instead, Tall Tree sues its reinsurer, MRAm, seeking declarations that (1) the Excess Policies provide coverage *to HP* for the Starter Cartridge Suits under the definition of "advertising injury"; and (2) as a *consequence* of the declaration in (1), that the Reinsurance Agreements obligate MRAm to indemnify Tall Tree for a payment it might make in the future.  Tall Tree improperly attempts to manufacture an actual controversy where none presently exists.

Tall Tree erroneously contends that defendant MRAm bears the burden of establishing the absence of Article III subject-matter jurisdiction and bases its opposition brief on this fallacious premise.  Tall Tree is patently wrong.  The plaintiff *always* bears the burden of establishing subject-matter jurisdiction, even when the defendant files a motion challenging jurisdiction.  In order to establish Article III subject-matter jurisdiction, Tall Tree must prove the existence of a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Tall Tree must demonstrate injury which is real, not imagined; concrete, not abstract; apparent, not illusory and demonstrable, not speculative.  *J.N.S., Inc. v. State of*

CRAIG & WINKELMAN LLP

1   *Indiana,* 712 F.2d 303, 305 (7th Cir. 1983).    Instead, Tall Tree erroneously

2   contends it does not have the burden on this issue.  Its inability to appreciate, much

3   less satisfy, its burden of proving subject-matter jurisdiction is fatal.

4         Tall Tree notes that the United States Supreme Court held over 70 years ago

5   that federal courts have jurisdiction to issue declaratory judgments in insurance

6   matters. (Opp. at 1:1-5.)   Since then, federal courts have issued thousands of

7   decisions regarding subject-matter jurisdiction in the insurance context.   Yet,

8   despite over seven decades worth of relevant case authority, Tall Tree is unable to

9   cite a single decision involving a ceding insurer seeking a declaration under a

10  reinsurance contract without a judgment first having been entered declaring the

11  rights and obligations of the parties to the underlying insurance contract, or

12  payment of the claim by the ceding insurer.  Nor does Tall Tree cite any decision

13  involving a reinsurer being forced to assume the position of the ceding insurer and

14  litigate coverage over the underlying policy, to which the reinsurer is not a party, in

15  an action against the ceding insurer that does not include the underlying insured.

16        There is no actual controversy as required by Article III and the Court lacks

17  jurisdiction over this matter.  Tall Tree's assertions to the contrary are unsupported

18  by law, the allegations in its Complaint, or both.  For the reasons set forth here and

19  in MRAm's opening brief, this action should be dismissed.

20                      **II.    DISCUSSION**

21  **A.    Tall Tree Erroneously Argues That MRAm Bears The Burden of Proof.**

22        Tall Tree erroneously asserts that MRAm has the "heavy burden" of proving

23  the absence of subject-matter jurisdiction because MRAm has filed a motion for

24  judgment on the pleadings. (Opp. at 5:4.)  Not so.  The plaintiff always bears the

25  burden of establishing the federal court's subject-matter jurisdiction.  In fact, the

26  court presumes a lack of jurisdiction unless the plaintiff proves otherwise.

27  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Thompson v.*

28  *McCombe,* 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's

CRAIG & WINKELMAN LLP

2

1  jurisdiction has the burden of proving the actual existence of subject matter
2  jurisdiction."); *see also Mutual Pharm. Co. v. Pfizer, Inc.,* 307 F. Supp. 2d 88, 91-
3  92 (on Rule 12(b)(1) motion to dismiss, "plaintiff bears the burden of establishing
4  that the court has subject-matter jurisdiction").  It is Tall Tree, not MRAm, who
5  must sustain a heavy burden, and Tall Tree fails to do so here.

6       Tall Tree also ignores the fact that MRAm seeks dismissal of this action
7  based on Fed. R. Civ. P. 12(h)(3), which provides that the Court must dismiss the
8  action at any time it determines that it lacks subject-matter jurisdiction.  It is
9  incumbent on Tall Tree, as plaintiff in this action, to prove that the Court has
10  subject-matter jurisdiction. Tall Tree's failure to recognize, let alone sustain, its
11  burden of establishing jurisdiction requires dismissal.

12  **B.    Tall Tree Fails to Sustain Its Burden Of Proving The Existence Of A**
13  **Present, Actual Controversy Necessary to Invest The Court With**
      **Subject-Matter Jurisdiction.**
14

15       Although Tall Tree references decades of law pertaining to declaratory relief
16  for insurance coverage matters, it does not cite any cases that remotely address the
17  factual scenario presented here.   Indeed, the cases relied on by Tall Tree
18  demonstrate MRAm's point.  There are no cases that support Tall Tree's assertion
19  that it can seek a declaration of its rights to the underlying insurance contract
20  against a reinsurer and then bootstrap that finding to create an actual controversy in
21  the reinsurance contract.  Rather, the cases cited by Tall Tree all involve a dispute
22  between parties to the *reinsurance* contract, and all arise *after* the ceding insurance
23  company made an indemnity payment pursuant to the underlying insurance
24  contract.  Further, *none* of the cases cited by Tall Tree involve litigation against a
25  reinsurer of *both* the underlying insurance and reinsurance contracts
26  simultaneously, and *none* involve an attempt by the ceding insurer to seek
27
28

CRAIG & WINKELMAN LLP

MUNICH REINSURANCE AMERICA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12(c)
AND 12(h)(3) MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON LACK OF SUBJECT-MATTER JURISDICTION

1    declaratory judgment on the *underlying insurance* policy *against the reinsurer*.[1]

2        Moreover, Tall Tree's contention that subject-matter jurisdiction is

3    established whenever an insurer or "a reinsurer denies coverage for a claim by an

4    insurer that has purchased a policy of reinsurance" (Opp. at 1:19-21; 7:25-28) is

5    wrong.  A purported coverage denial does not, in and of itself, create a controversy

6    that is real, concrete and substantial.  Nor does it guarantee that the court's

7    determination will provide a final determination or cure an otherwise advisory

8    ruling.  Simply, an allegation that an insurer or reinsurer has denied to pay a claim

9    (or in this case, a potential claim) is not the test used by courts to determine whether

10   an actual controversy exists.

11   _____

12       [1]  In fact, the cases cited by Tall Tree are consistent with the notion that reinsurance contracts are presumed to be contracts of indemnity.  *Ascherman v. General Reinsurance Corp.,* 183 Cal. App. 3d 307, 311 (1986).  *See, e.g., British Ins. Co. of Cayman v. Safety Nat'l Cas. Co.,* 335 F.3d 205 (3d Cir. 2003) (ceding insurer submitted billing to reinsurer seeking indemnification under reinsurance agreement for payments insurer made pursuant to workers' compensation policy it issued to the insured and reinsurer refused to indemnify based on cedant's failure to provide timely notice); *American Bankers Ins. Co. v. Northwestern Nat'l Ins. Co.,* 198 F.3d 1332 (11th Cir. 1999) (retrocedent made payments pursuant to original reinsurance agreement and sought indemnity from retrocessionaire under terms of retrocession agreement); *Zenith Ins. Co. v. Employers Ins. of Wausau,* 141 F.3d 300 (7th Cir. 1998) (reinsurer filed suit alleging cedant failed to provide timely notice of underlying claim pursuant to provisions of the reinsurance agreement; the cedant failed to provide notice of claim until after judgment against the insured, a judgment that cedant settled by paying $7,000,000 and *then* billing reinsurer for portion allegedly owed under reinsurance agreement); *Unigard Sec. Ins. Co. v. North River Ins. Co.,* 4 F.3d 1049 (2d Cir. 1993) (reinsurer brought action seeking declaratory judgment relieving it of any obligation to indemnify ceding excess insurer for losses paid by insurer on asbestos claims pursuant to asbestos claims facility agreement and excess insurer counterclaimed for indemnification); *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.,* 979 F.2d 268 (2d Cir. 1992) (reinsurer filed suit seeking declaration absolving it of indemnification obligations under reinsurance agreements based on cedant insurer's failure to provide prompt notice, following cedant's payment of certain sums on behalf of its insured followed by a "cash call" on its reinsurers); *Insurance Co. of State of Pa. v. Associated Int'l Ins. Co.,* 922 F.2d 516 (2d Cir. 1992) (reinsurer asserted late notice defense in action by insurer for breach of contract damages and declaratory relief); *Security Mut. Cas. Co. v. Century Cas. Co.,* 531 F.2d 974 (10th Cir. 1976) (reinsurer asserted late notice defense in action by ceding insurer after paying defense costs on insured's behalf in underlying action).

CRAIG & WINKELMAN LLP

1.      **Tall Tree Fails To Sustain Its Burden of Proving A Present, Actual Controversy Necessary To Invest The Court With Subject-Matter Jurisdiction To Declare Tall Tree's Obligations To Its Insured Under Its Excess Policies.**

Tall Tree concedes that MRAm and Tall Tree maintain no legal relationship under the Excess Policies.  (Opp. at 12:13.)  In a belated attempt to salvage its position, Tall Tree asserts for the first time that the Excess Policies issued to HP "are incorporated by reference in the Reinsurance Agreements." (Opp. at 12:15-16.)  Tall Tree bases its opposition on this contention, yet does not attribute any legal, contractual or factual support for the assertion, nor is it alleged in the Complaint.  While the Court assumes the truth of well-pleaded allegations, it is not compelled to "accept conclusory allegations concerning the legal effect of facts set out by the complaint."  *Reed v. City of Chicago,* 77 F.3d 1049, 1050 (7th Cir. 1996).  Nor need the Court accept as true unwarranted deductions of fact. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss").  Here, Tall Tree's unsupported and conclusory assertion should be disregarded.

Moreover, the assertion is irrelevant as Tall Tree fundamentally misconstrues the parties' obligations and rights under the Reinsurance Agreements.  Without a single legal authority to support its remarkable position, Tall Tree argues that if the Court were to declare that Tall Tree were liable to HP, then MRAm "must pay Tall Tree's claim." (Opp. at 13:4-7.)  Tall Tree conflates its obligations under the Excess Policies with MRAm's obligations, if any, under the Reinsurance Agreements.  It is axiomatic that the rights and obligations of the parties depend on the terms of their contract, and an insurer's liability to the insured pursuant to the underlying insurance does not automatically create for the reinsurer an obligation to pay under

CRAIG & WINKELMAN LLP

the reinsurance contract.  The cases cited by Tall Tree say as much since they all involve disputes over entitlement to reinsurance after the ceding insurer paid the underlying claim.

Tall Tree also fails to address HP's absence from an action designed to declare rights on a contract to which HP is the proper party.  Tall Tree acknowledges the advisory nature of any declaration under the excess policies when it argues that if the Court declares that Tall Tree is liable to *HP*, then MRAm "must pay Tall Tree's claim" (incorrect, as discussed *supra*), and if the Court "finds that Tall Tree is not liable to HP, then [MRAm] *may* not be required to pay Tall Tree's claim." (Opp. at 13:6-7, emphasis added.)  The declaration sought by Tall Tree as to the Excess Policies, coupled with HP's absence from this action, makes the Court's rulings inconclusive and advisory.  This is a textbook example of an advisory opinion prohibited by Article III.  *See Calderon v. Ashmus,* 523 U.S. 740, 747 (1998).

Thus, Tall Tree fails to sustain its burden of demonstrating an actual controversy between Tall Tree and MRAm regarding the Excess Policies that would invest this Court with subject-matter jurisdiction.

**2.    Tall Tree Fails to Sustain Its Burden of Proving A Present, Actual Controversy Necessary To Invest The Court With Subject-Matter Jurisdiction To Declare MRAm's Obligations To Tall Tree Under MRAm's Reinsurance Contracts.**

Typically, when an insurance company receives a claim under an insurance policy, it evaluates whether the claim is covered under the terms of the insurance contract.  Then, it either pays it, denies it, requests additional information to evaluate it, or litigates coverage issues with its insured.  Here, Tall Tree concedes it has done none of these things.

In the face of this inexplicable inaction, Tall Tree erroneously relies on *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677 (7th Cir. 1992), to

**CRAIG & WINKELMAN LLP**

6

1    suggest that there are rights or obligations under the Excess Policies that are

2    contingent in nature, and that such purported contingencies do not bar Tall Tree

3    from seeking a declaration of rights under the Reinsurance Agreements.  Tall Tree

4    further argues that there is a "much stronger" "probability that Tall Tree will

5    become liable to HP" than the probability addressed in *Bankers Trust*. (Opp. at

6    9:25-26.)  Tall Tree misunderstands the concept of contingency in this matter and

7    misconstrues *Bankers Trust.*

8        Tall Tree now argues that it "will become liable" to HP at some future time.

9    Tall Tree does not explain what contingencies exist *under its Excess Policies* that

10   still require resolution.  If HP has, in fact, made a claim to Tall Tree and Tall Tree

11   has, in fact, concluded it owes a sum certain based on the terms of its insurance,

12   Tall Tree identifies no contingencies under its Excess Policies that prevent payment

13   of the purported claim.[2]  If Tall Tree contends that it may first obtain a declaration

14   of its rights under the *Reinsurance Agreements* before it pays its insured's claim

15   under the *Excess Policies*, Tall Tree fails to provide any legal authority in support,

16   and the decisions it cites are to the contrary.

17       *Bankers Trust* certainly does not support Tall Tree's contentions.  First, it

18   does not involve a party seeking declarations under both insurance and reinsurance

19   contracts.  Second, the decision recognizes a limited exception to the general rule

20   that "decisions about indemnity should be postponed until the underlying liability

21   has been established."  *Metal Working Lubricants Co. v. United States Fire Ins.*

22   *Co.*, 460 F. Supp. 2d 897, 900 (S.D. Ind. 2006) (citing *Lear Corp. v. Johnson Elec.*

23   *Holdings, Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003)).  Here, there is no reason to

24   deviate from the general rule.   Any action regarding the application of the

25   Reinsurance Agreements must wait until after Tall Tree's liability, if any, under the

26   Excess Policies between Tall Tree and HP is established, and Tall Tree pays an

27

28        [2]  Tall Tree's failure to pay the claim and Tall Tree's or HP's failure to seek
     declaratory relief against the other is highly unusual and suspicious.

CRAIG & WINKELMAN LLP

1   actual claim in accordance with the terms and conditions of the Excess Policies.

2      Third, *Bankers Trust* is factually distinguishable.  In *Bankers Trust*, a third-

3   party tortfeasor filed an action against the insured.  The insurer then filed a

4   rescission action against the insured asserting that the insured knew of the

5   tortfeasor's possible action but did not disclosure that to the insurer when the policy

6   was issued.  Significantly, the insurer did not name the tortfeasor in the rescission

7   action.  The tortfeasor then filed a declaratory relief action against the insurer

8   seeking a determination that if it prevailed against the insured, the insurer must pay

9   under the terms of the insurance contract.  In other words, the action was designed

10  to counter the relief sought by the insurer in the rescission action.  In its ruling,

11  *Bankers Trust* recognized that the third-party tortfeasor had a legally protectable

12  interest in the insurance contract, even though the claim had not yet been reduced to

13  judgment.  *Id.* at 682.  Here, Tall Tree presents no immediate need giving rise to an

14  actual controversy.

15     The other cases cited by Tall Tree are also readily distinguishable.  In *Eureka*

16  *Fed. Sav. & Loan Ass'n v. American Cas. Co.,* 873 F.2d 229 (9th Cir. 1989), the

17  insured sued its insurer to determine the available policy limits for multiple

18  insureds who were defendants in an underlying action.  The court held that

19  determining the total available policy limits created issues of sufficient immediacy

20  and reality to warrant declaratory relief, in light of disputes arising during

21  settlement negotiations in the underlying action.  These facts are clearly different

22  from Tall Tree's allegations that the Starter Cartridge Suits are resolved and that

23  HP's defense costs are quantified.  Thus, *Eureka* provides no assistance to Tall Tree

24  here.  Nor is *Allendale Mut. Ins. Co. v. Kaiser Eng'rs*, 804 F.2d 592 (10th Cir.

25  1986), any more instructive.  In *Allendale*, the insurer filed an action against

26  underlying tortfeasors in order to preserve the statute of limitations on a possible

27  subrogation claim while it appealed the insured's judgment against it in a related

28  action.  Again, that is not the situation here.  Unlike *Allendale*, there is no urgency

**CRAIG & WINKELMAN LLP**

or immediacy in Tall Tree's claims and Tall Tree fails to establish the existence of an actual, present controversy sufficient to vest this Court with subject-matter jurisdiction under the Declaratory Judgment Act.

**C.    Leave to Amend is Not Available.**

Tall Tree asserts that Fed. R. Civ. P. 15(a) requires that it be granted leave to amend should the Court determine it lacks subject-matter jurisdiction. However, if the Court agrees with MRAm and finds subject-matter jurisdiction lacking, the Court properly should dismiss the action.

Tall Tree does not explain how an amended complaint could withstand a motion to dismiss. *Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985) (court justified in denying motion to amend pursuant to Rule 15(a) if the proposed amendment could not withstand a motion to dismiss); *see also DeLoach v. Woodley*, 405 F.2d 496, 496-497 (the liberal amendment rules of Rule 15(a) "do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted"). The absence of a proposed amendment or explanation from Tall Tree demonstrating how it might establish subject-matter jurisdiction suggests that any amended pleading could not overcome a motion to dismiss.

Further, Tall Tree must do more than merely seek leave to amend in its opposition brief. It should have filed a separate motion to amend and included a proposed amended complaint. In the absence of a separate motion and proposed amended complaint, the Court should deny Tall Tree's request as it is left with "nothing upon which to exercise its discretion." *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002); *see also Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (district court did not abuse discretion in failing to invite amended complaint when plaintiff had not moved to amend and submitted proposed amended pleading.) For these reasons, the action should be dismissed.

CRAIG & WINKELMAN LLP

# III.   CONCLUSION

Tall Tree fails to satisfy its burden of establishing subject-matter jurisdiction because none exists in this matter.  Munich Reinsurance America requests that the Court dismiss this action for lack of subject-matter jurisdiction.

DATED:  July 18, 2008                CRAIG & WINKELMAN LLP


By:   /s/_____
            Bruce H. Winkelman, Esq.
            Counsel for Defendant
            MUNICH REINSURANCE AMERICA, INC.

CRAIG & WINKELMAN LLP

MUNICH REINSURANCE AMERICA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12(c)
AND 12(h)(3) MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON LACK OF SUBJECT-MATTER JURISDICTION